Randy M. Andrus (10392)
**ANDRUS LAW FIRM, LLC**
299 South Main Street, Suite 1300
Salt Lake City, Utah 84111-2241
Telephone: (801) 535-4645
Email: randy@andrusfirm.com

*Attorney for Plaintiff*

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **VANESSA BILLY;**<br><br>Plaintiff,<br><br>vs.<br><br>**EDGE HOMES, LLC; EDGE CONSTRUCTION, LLC; STEVE MADDOX; DOES** 1 through 50, inclusive,<br><br>Defendants. | **COMPLAINT FOR DAMAGES**<br><br>**(JURY TRIAL DEMANDED)**<br><br>Case No. 2:19-cv-00058-EJF<br><br>Honorable Judge Evelyn J. Furse |

    **COMES NOW**, Plaintiff, and without waiver of any rights or entitlements, including to amend, allege against Defendants jointly and severally, as follows:

### I. PARTIES AND RELATED PARTIES

    **1.**    Plaintiff, **VANESSA BILLY** (hereinafter "**Plaintiff**" or "**BILLY**") is, and at all times mentioned in this Complaint was, an individual, residing in the State of Utah.

    **2.**    Plaintiff is informed, and believes and on that basis alleges that Defendant, **EDGE HOMES, LLC**, dba/aka **EDGE HOMES** (hereafter "**Defendant**" or "**EDGE**

HOMES") is, and at all times mentioned in this Complaint was, a business entity, located and/or doing business from its registered place of business in Salt Lake County, State of Utah.

3.  Plaintiff is informed, and believes and on that basis alleges that Defendant, **EDGE CONSTRUCTION, LLC**, dba/aka **EDGE CONSTRUCTION** (hereafter "**Defendant**" or "**EDGE CONSTRUCTION**") is, and at all times mentioned in this Complaint was, a business entity, located and/or doing business from its registered place of business in Salt Lake County, State of Utah. **EDGE HOMES, LLC** and **EDGE CONSTRUCTION, LLC** are collectively referred to as **EDGE** herein.

4.  Defendant, **STEVE MADDOX** (hereinafter "**Defendant**" or "**MADDOX**") is, and at all times mentioned in this Complaint was, an individual, residing in Utah County, State of Utah.

5.  Plaintiff is ignorant of the true names and capacities of Defendants sued herein as **DOES** 1 through 50, and therefore sue said Defendants by such fictitious names. Plaintiff is informed and believes, and on that basis, alleges that each Defendant named herein is responsible in some manner for the acts, omissions, and occurrences herein alleged, and that Plaintiff's damages, as hereinafter alleged, were proximately caused by such occurrences. Plaintiff will amend this Complaint to allege the true names and capacities of such Defendants when they are ascertained and based on her rights to conduct discovery.

6.  Plaintiff is informed and believes, and on that basis alleges, that each Defendant may or may not have been the agent, servant, and/or employee of each Defendant and may or may not have acted in a concerted conspiracy, pursuant to a common plan, civil conspiracy, or other common and/or integrated enterprise, and that each Defendant may or may not have

authorized, ratified, and/or negligently supervised, each act of each Defendant, and that each Defendant is and/or may or may not be the alter ego of each Defendant. Plaintiff is informed and believes and, on that basis, alleges that Defendants were and are responsible for the acts causing Plaintiff's damages as hereinafter alleged. All Defendants are collectively referred to as "Defendants".

## II.  JURISDICTION AND VENUE

7.     The Court has jurisdiction over this matter by virtue of federal question jurisdiction, including arising under the laws of the United States, including *Title VII of the Civil Rights Act of 1964*, as amended ("*Title VII*") for employment discrimination. Jurisdiction is specifically conferred on this Court by 42 U.S.C. §§ 2000e-2(a), (k) *et seq.* Equitable and other relief are also sought under 42 U.S.C. 2000e(5)(g). The Court also has supplemental and/or ancillary jurisdiction over related claims which also exist. Jurisdiction is also based on 28 U.S.C. §§ 1331, 1343, and 1367.

8.     Venue is proper by virtue of 28 U.S.C. § 1391 as the parties reside; have their principal place of business; are incorporated; are citizens with physical presence and the intent to remain indefinitely in Utah and in this District; and/or are subject to jurisdiction in this District as the the most significant contacts, events or omissions giving rise to the claims occurred here.

## III.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     On or about January 2, 2018, Plaintiff Vanessa Billy filed Charges of Discrimination including with the United States Equal Employment Opportunity Commission ("EEOC"), case number 35C-2018-00153.

10.     On or about October 30, 2018, the EEOC issued a Notice of Right to Sue to Ms. Billy, attached hereto as **EXHIBIT A**.  Plaintiff Billy has exhausted her administrative remedies.

11.     The Complaint in this action was timely filed within the 90-day period specified in the Notice of Right to Sue.

### IV.   FACTUAL BACKGROUND AND ALLEGATIONS

### A.     *Defendants' Structure and Hierarchy*

12.     At all times relevant, including since 2009/2010 to present, Defendants EDGE is believed to be a domestic for-profit company and enterprise, engaged in interstate commerce with its headquarters and its principal place of business located at 13702 South 200 West, Suite B12, Draper, Utah 84020.

13.     At all times relevant, EDGE is primarily a builder and retailer of homes which are built in various locations around the State of Utah.

14.     At all times relevant, including since December 2016 to present, Defendant Maddox is and has been an individual; and is and has been an owner, officer, and proxy of EDGE.

### B.     *Defendant EDGE Had a Special Relationship with Plaintiff Billy*

15.     Since December 2016 to December 2017, a special relationship existed between EDGE and Ms. Billy, including an employer-employee relationship.

16.     Since December 2016 to December 2017, Maddox was in a position of power, authority and trust over Ms. Billy and her employment at EDGE.

17.     On or about December 8, 2016, and thereafter, Ms. Billy and EDGE entered into express oral and implied contracts, promises and agreements.

4

18.     Among the contracts, promises, and representations made by EDGE to Ms. Billy, and to induce her to rely, leave other employment and opportunities, and enter into the agreements, were promises and representations that EDGE would not discharge Ms. Billy without good, just, or legitimate cause.

19.     Ms. Billy agreed to be employed by EDGE and provide her substantial time, talent, skill, experience, knowledge, and industry.

20.     EDGE agreed in exchange that it would pay compensation to Ms. Billy, including wages, vacation, bonuses, and other compensation.

21.     EDGE also agreed that it would not act arbitrarily with Ms. Billy.

22.     EDGE also agreed that it would act with mutual consent with Ms. Billy.

23.     EDGE also agreed that it would act with mutual respect with Ms. Billy.

24.     Ms. Billy began her employment with EDGE as a full-time Contract Coordinator.

25.     In or about October 2017, Ms. Billy became an EDGE sales agent while training multiple persons for her Contract Coordinator position.

### D. Defendants Assisted, Enabled and Were Complicit in the Conduct Toward Plaintiff

26.      Prior to December 2016, EDGE knew of Maddox's sexual behaviors towards others, including to other employees of EDGE.

27.     Prior to December 2016, EDGE created; had special knowledge of; and approved EDGE's policies expressly prohibiting any form of unlawful harassment by anyone, including any supervisory personnel, co-worker, vendor, client, or customer, that is sexual in nature or based on race, color, religion, gender, national origin, disability, age, status as a veteran, or any

other status or characteristic protected by law, and that violation of this policy will result in disciplinary action up to and including termination.

28.     The EDGE harassment at the workplace policy states:

"**Sexual harassment** constitutes discrimination and is illegal under federal, state and local laws. For the purposes of this policy, sexual harassment is defined in the Equal Employment Opportunity Commission Guidelines as unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when, for example: (i) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; (ii) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or (iii) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

Sexual harassment may include a range of subtle and not so subtle behaviors and may involve individuals of the same or different gender. Depending on the circumstances, these behaviors may include, but are not limited to: unwanted sexual advances or requests for sexual favors; sexual jokes and innuendos; verbal abuse of a sexual nature; commentary about an individual's body, sexual prowess or sexual deficiencies; leering, catcalls or touching; insulting or obscene comments or gestures; display or circulation in the workplace of sexually suggestive objects or pictures (including through e-mail); and other physical, verbal or visual conduct of a sexual nature.   Sex-based harassment, that is harassment not involving sexual activity or language (e.g., male manager yells only at female employees and not males), may also constitute discrimination if it is severe or pervasive and directed at employees because of their gender.

**Harassment** on the basis of any other protected status is also strictly prohibited. Under this policy, harassment is verbal or physical conduct that denigrates or shows hostility or aversion toward an individual because of his/her race, color, religion, gender, national origin, disability, age, marital status, genetic predisposition or carrier status, or any other characteristic protected by law, and that: (i) has the purpose or effect of creating an intimidating, hostile or offensive work environment; (ii) has the purpose or effect of unreasonably interfering with an individual's work performance; or (iii) otherwise adversely affects an individual's employment opportunities. Harassing conduct includes, but is not limited to: epithets, slurs or negative stereotyping; threatening, intimidating or hostile acts; denigrating jokes and display or circulation in the workplace of written or graphic material that denigrates or shows hostility or aversion toward an individual or group (including through e-mail)."

**29.** Shortly after Ms. Billy was hired, Maddox noticed and became very attracted to her.

**30.** Thereafter, including in or about January 2017 and after, Maddox made a point to come see Ms. Billy and pursue her in an unwelcomed and unsolicited manner at and when she was working in conjunction with her job duties. Maddox began with subtle behaviors based on Ms. Billy's gender, asking her repeated questions about her personal life; questions about her boyfriend; how much money he made; why she wasn't married to her boyfriend.

**31.** Further, during Maddox's offensive, unwelcomed and unsolicited advances to Ms. Billy, Maddox would state that he was in the process of divorcing his wife; how his wife was overweight; how his wife will never have to work again, and how she gets a million dollars. Maddox stated how he couldn't stand his wife at all; how he hated her; and found her appalling.

**32.** Further, during Maddox's offensive, unwelcomed and unsolicited advances to Ms. Billy, Maddox would state to her that he wanted a woman with olive skin, dark hair [like Ms. Billy]; asking if Ms. Billy knew how much money he made; and how he could take care of any lady very well. Maddox also expressed how he wanted an active woman, healthy and fit, and he would ask Ms. Billy what she did to work out and stay fit; and questions about Ms. Billy's weekends off work, and if her boyfriend was around.

**33.** Subsequent and in addition to the above, in or around February 2017 and after, Maddox persisted in his pursuit of unwelcomed, offensive, and unsolicited advances to Ms. Billy, escalating his sharing of inappropriate stories from his life and his encounters with women. One in particular, told multiple times, was about how when Maddox was on a church mission, he knocked on a door and a fully naked red headed woman answered. He stated he never liked

women like her—red hair all over.  He said he was interested in women that were darker skin tone, olive skin, dark hair [like Ms. Billy].

34.    Subsequent and in addition to the above, in or around March 2017 and after, Maddox persisted in his further pursuit and escalating pervasive, offensive, unwelcomed, and unsolicited advances to Ms. Billy including additional behaviors such as calling her into his private office alone and to bring a notebook.  Instead of discussing work matters with Ms. Billy, Maddox would talk about his personal life or ask her questions about her personal life; they wouldn't talk about work.  Ms. Billy complained by expressing her concerns, that she had a lot of work to do and about the way he talked to her.  Ms. Billy told Maddox to stop, but Maddox would just laugh at her; brush her off; would not stop; and would not leave her alone.  Ms. Billy openly expressed her complaints and concerns about their conversations on several occasions when he would call her into his office alone.

35.    In company meeting settings, Maddox also openly joked inappropriately and offensively, directing comments to Ms. Billy, subjecting her to ridicule and embarrassment.  She again complained and asked him to watch and stop his inappropriate unwelcomed behaviors and conversations, but to no avail.

36.    Instead of stopping, Maddox's behaviors continued.   Ms. Billy found herself becoming more and more uneasy when Maddox would come talk to her.  Her desk was in a corner of the office... backed against a wall.  Her ability to leave her desk when Maddox was talking to her, forced her to be trapped and fearful of losing her job.

**37.**     Maddox was in the position of power, authority, and control over her job and promotion opportunities, and from there, Maddox used transference, manipulation, and other methods.

**38.**     On an additional occasion, in or around May 2017 and after, Maddox approached Ms. Billy unwelcomed and unsolicited, and in an offensive and intimidating manner said that he "felt like throwing a woman down on a table and f*ing her hard."  When making this and other such comments, Maddox would watch for Ms. Billy's reaction and ask her questions about how she felt when he made those comments.  Ms. Billy knew he didn't like it when she was unresponsive, and Maddox would become angry.

**39.**     Despite Ms. Billy's complaints to management and her superiors, including to Maddox himself, Maddox continued in his pervasive, offensive, unwelcomed, intimidating, and unsolicited behaviors and advances to Ms. Billy.  On a separate subsequent occasion, Maddox noticed Ms. Billy's painted fingernails, then expressed how he needed a girl to be girly enough to care about painting her nails…yet tomboy enough to camp and ride mules with him.  He talked extensively and directed to Ms. Billy about what he wanted in a woman for himself.

**40.**     Maddox knew Ms. Billy was a ball of nerves around him and he knew how uncomfortable he made her.

**41.**     On an occasion, in or around September 2017, Maddox told Ms. Billy that he liked her hair, then proceeded to assault and actually touch Ms. Billy's person physically without her permission, including her hair, in an offensive, unwelcomed, unsolicited, and unpermitted manner. Ms. Billy was frozen and fearful.

42.     The work environment became increasingly hostile, offensive, and intimidating. When Ms. Billy would not respond as Maddox wanted, Maddox would made demands and statements, "Why don't you look at me?   Why don't you answer me?"   "I want you to rate yourself." "I don't think you'll make a good agent.  You're flat".  "You wouldn't be able to close the deal."

43.     After Maddox's advances to Ms. Billy were rejected, rebuffed, and refused by Ms. Billy, including through her complaints and protected activities, Maddox took retaliatory action against her.

44.     Maddox, through the use of perverted, unjust power, sought ways to have Ms. Billy's employment terms and conditions altered and/or have her removed from her employment, including from her Contract Coordinator position.

45.     In or about October 2017, Ms. Billy applied for, and was interviewed to be, an EDGE Sales Agent.

46.     As an EDGE Sales Agent, Ms. Billy would not be in the office around Maddox.

47.     In or about October 2017, Ms. Billy was accepted to be an EDGE Sales Agent.

48.     After she applied and was accepted to be an EDGE Sales Agent, Ms. Billy in reliance, continued to also work in her Contract Coordinator position and spent much time training multiple people to take over her position.

49.     Ms. Billy relied and commenced her performance, training, and work as a Sales Agent—with further promises and assurances of employment being made to her by EDGE.

50.     EDGE through its agents and officers made a number of representations, promises, and agreements with Ms. Billy, in addition to those referenced above, including:

a.     That Ms. Billy's employment would not be impeded in the company;

b.     That Ms. Billy would be protected;

c.     That Ms. Billy would be provided with all that is necessary to be an EDGE Sales Agent;

d.     That Ms. Billy's real estate agent training and licensing expenses would be provided and paid for by EDGE, something that EDGE stated had not been done before.

51.     Despite the representations, promises, and agreements with Ms. Billy, EDGE, including Maddox, took further retaliatory action against Ms. Billy to get rid of her; terminating her employment; and seeking from her a "Release of Claims" including as to Maddox.

52.     Instead, EDGE engaged in further gender discrimination against, harassment towards, and a continuing hostile work environment towards Ms. Billy.  EDGE thereby engaged in further discrimination and retaliation, including by altering the terms and conditions of her employment and by the termination of Ms. Billy—all in direct violation of her rights and the express promises made to her.

53.     The conduct, behaviors, retaliation, and adverse action against Ms. Billy would not have been taken by EDGE but for Ms. Billy's challenges against and opposition to the unlawful gender discrimination, sexual harassment, quid pro quo, hostile work environment, and retaliation, and/or her participation in protected activities..

54.     Unfortunately, EDGE's behaviors also breached EDGE's promises and commitments, to Ms. Billy, including:

a.     That Ms. Billy was impeded in the company;

b.     That Ms. Billy was not protected, her employment and physically;

11

      c.    That Ms. Billy was not provided with all that is necessary to be an EDGE Sales Agent;

      d.    That Ms. Billy's real estate agent training and licensing expenses were not provided and paid for by EDGE.

55.    Instead of correcting and stopping the gender discrimination, sexual harassment, hostile work environment, and retaliation, EDGE continued with additional adverse action.

## V.  <u>CAUSES OF ACTION</u>

### <u>FIRST COUNT</u>

**(Violations of Civil Rights and Statutory Discrimination, including *Title VII*)**
**(Gender / Sexual Harassment / Hostile Work Environment / Retaliation)**
**(Against Defendants EDGE)**

56.    Plaintiff incorporates by reference the above allegations as if set forth fully herein.

57.    From on or about December 8, 2016 to December 15, 2017, Plaintiff Billy was employed with Defendants EDGE.

58.    Defendants EDGE is an employer affecting commerce with more than 15 employees.

59.    During her employment with EDGE, Ms. Billy has been a member of protected classes, including on the basis of her gender/sex (female) ("Protected Classes").

60.    At all times during her employment with EDGE, Ms. Billy was qualified for the positions she held and for those positions which have been denied to her.

61.    During her employment, Ms. Billy was objectively and subjectively, subjected to gender discrimination, severe and pervasive sexual harassment, quid pro quo discrimination, hostile work environment, retaliation, and adverse employment action which has negatively

impacted and altered the terms and conditions of her employment, including denial of promotions, job opportunities, her job positions, compensation, based upon her Protected Classes and in retaliation for her protected action, all in violation of *Title VII of the Civil Rights Act of 1964*, 42 U.S.C. §§ 2000e-2(a), (k) *et seq.*

62.     EDGE has adopted policies and standards against gender discrimination, sexual and other unlawful harassment, quid pro quo, hostile work environment, and retaliation which EDGE has made promises to its employees and to Ms. Billy particularly, including which is set forth above, which EDGE violated.

63.     EDGE, including through Maddox, engaged in severe, pervasive, offensive, abusive, and retaliatory conduct to Ms. Billy, including as described herein, which violates *Title VII* and EDGE's own policies and standards.  Maddox acted wrongfully, and his conduct fell below EDGE's policies, standards, and expectations—in violation of EDGE's own written policies, including those prohibiting sexual harassment, quid pro quo, and hostile work environment—all of which resulted in interference with Ms. Billy's Constitutional and civil rights; her employment and work performance; creating a hostile and abusive working environment.

64.     Ms. Billy complained to EDGE and engaged in protective activities.  Following her protected activities, including notification to EDGE of her complaints, including as set forth above, Ms. Billy was subjected to further gender discrimination, sexual harassment, further hostile, abuse and toxic work environment, and retaliation including EDGE's asserted false and pretextual reasons for termination, thus violating and denying her of her rights.

**65.**     Ms. Billy was treated less favorably than others not in her Protected Classes. EDGE allowed others, not in Ms. Billy's Protected Classes, to engage in the same or similar conduct without being treated with adverse action like Ms. Billy was.

**66.**     Ms. Billy is informed, believes and on that basis alleges that persons not in the same Protected Classes as Ms. Billy were treated more favorably than was Ms. Billy, and were not treated like Ms. Billy was subjected to.

**67.**     Although qualified for her and other promotional positions, Ms. Billy was subjected to disparate treatment and disparate impact discrimination, and tangible adverse employment action when she was actively discriminated against, subjected to a hostile work environment, harassed, and denied job advantages and promotional positions at EDGE.

**68.**     Ms. Billy engaged in protected activities including with her complaints; however, she was retaliated against, subjected to adverse action, put in fear of reprisal, distraught, and subjected to adverse action because of and with the motivating factors being her Protected Classes status.

**69.**     As a result of EDGE's actions and willful violation of her rights, Ms. Billy has suffered irreparable injuries, including but not limited to loss of pay, compensation and other economic losses; and is entitled to recover damages and relief, for emotional pain and suffering, mental anguish, humiliation, embarrassment, personal indignity, loss of enjoyment of life, and other intangible injuries for all of which she should be compensated, as well as for liquidated and punitive damages, *Eshelman* damages, pre-judgment and post-judgment interest, attorney fees, and costs, the exact amount to be shown at the time of trial.

**WHEREFORE,** Plaintiff prays judgment as hereinafter set forth.

## SECOND COUNT

### (Civil Assault)
### (Against All Defendants)

70.     Plaintiff incorporates by reference the above allegations as if set forth fully herein.

71.     Separate, apart, and standing alone from any employment discrimination, retaliation, and/or any Title VII claims, Defendants, including EDGE and Maddox, and/or each of them, jointly, severally, and individually, also perpetrated and engaged in harmful, offensive, assaulting conduct towards Ms. Billy, including physical conduct initiated by Maddox which was unwanted, unwelcomed, harmful, and damaging to Ms. Billy.

72.     Defendants, and/or each of them, knew or should have known that their threatened physical contact with Ms. Billy was unwanted, unwelcomed, harmful, and damaging to her.

73.     Defendants', and/or each of their, actions were perpetrated in such a manner so as to cause Ms. Billy harm and suffering to her as a person individually physically, mentally, and emotionally, including fear of danger, and imminent apprehension of physical battery to her.

74.     Defendants', and/or each of their, actions, including the unpermitted assaulting behaviors of Maddox upon Ms. Billy, were intentional.

75.     Defendants', and/or each of their, actions were unjustified, without Ms. Billy's consent.

76.     As a result of Defendants', and/or each of their, actions, Ms. Billy felt the imminent apprehension, fear, shock, anxiety, and fright of such contact, and was placed in great fear for her safety and well being.

**77.** Defendants, and each of them, knew or should have known that their threatened physical contact with Ms. Billy would cause both permanent emotional harm and permanent physical harm to her.

**78.** As a direct and proximate result of the aforementioned actions by Defendants, and/or each of them, Ms. Billy has sustained and will sustain damages including:

   a. extreme and severe pain and suffering, both physical and mental;

   b. economic damages, including bills and expenses for medical care and mental health counseling that Ms. Billy required and will require in the future;

   c. a diminution in the ability and capacity to work, earn money and perform household and other services in the future; and

   d. non-economic damages, including a loss of enjoyment of life.

**WHEREFORE,** Plaintiff prays judgment as hereinafter set forth.

## THIRD COUNT
### (Civil Battery)
### (Against All Defendants)

**79.** Plaintiff incorporates by reference the above allegations as if set forth fully herein.

**80.** Separate, apart, and standing alone from any employment discrimination, retaliation, and/or any Title VII claims, Defendants, including EDGE and Maddox, and/or each of them, jointly, severally, and individually, also perpetrated and engaged in battery by making harmful and offensive physical and sexual contact with Ms. Billy.

**81.** Defendants', and/or each of their, actions towards Ms. Billy, including physical contact were unwanted, unwelcomed, harmful, and damaging to Ms. Billy.

**82.**     Defendants, and/or each of them, knew or should have known that their intentional physical contact upon Ms. Billy was unwanted, unwelcomed, and damaging to her.

**83.**     Defendants', and/or each of their, actions were perpetrated in such a manner so as to cause Ms. Billy harm and suffering to her as a person individually physically, mentally, and emotionally, including shock, fear of danger to Ms. Billy.

**84.**     Defendants', and/or each of their actions were intentional.

**85.**     Defendants', and/or each of their, actions were unjustified and without consent.

**85.**     Defendants, and/or each of them, knew or should have known that their intentional and/or reckless physical contact with Ms. Billy, including the touching of Billy's body and person, was unwanted, unwelcomed, harmful, offensive and/or damaging to her.

**87.**     Defendants, and/or each of them, knew or should have known that their intentional physical contact with Ms. Billy would cause both permanent emotional harm and permanent physical harm to her.

**88.**     As a direct and proximate result of the aforementioned actions by Defendants, and/or each of them, Ms. Billy has sustained and will sustain damages including:

    a.      extreme and severe pain and suffering, both physical and mental;

    b.      economic damages, including bills and expenses for medical care and mental health counseling that Ms. Billy required and will require in the future;

    c.      a diminution in the ability and capacity to work, earn money and perform household and other services in the future; and

    d.      non-economic damages, including a loss of enjoyment of life.

**WHEREFORE,** Plaintiff prays judgment as hereinafter set forth.

## FOURTH COUNT

**(Breach of Contracts, Including Breach of Covenant of Good Faith and Fair Dealing)**
**(Against Defendants EDGE)**

89.     Plaintiff incorporates by reference the above allegations as if set forth fully herein.

90.     Separate, apart, and standing alone from any employment discrimination, retaliation, and/or any Title VII claims, on or about December 8, 2016 and again in or about October 2017, and thereafter, for valuable consideration, Ms. Billy and EDGE, intended, communicated, and entered into express contracts, including written, oral, and implied promises, contracts, and agreements, through offer and acceptance, including that Ms. Billy would be employed by EDGE and provide her time, talent, skill, experience, knowledge, and industry.

91.     EDGE agreed in exchange that Ms. Billy be paid compensation, including wages and other compensation; that with Ms. Billy's long-term employment.

92.     Further, EDGE through its agents and officers made a number of representations, promises, and agreements with Ms. Billy, including to induce her to rely, leave other employment and opportunities, and enter into the agreements, were promises and representations

        a.     That EDGE would not discharge Ms. Billy without good, just, or legitimate cause;

        b.     That in exchange for her providing her substantial time, talent, skill, experience, knowledge, and industry, EDGE would pay compensation to Ms. Billy, including wages, vacation, bonuses, and other compensation;

        c.     That EDGE would not act arbitrarily with Ms. Billy;

        d.     That EDGE would act with mutual consent with Ms. Billy;

        e.     That EDGE would act with mutual respect with Ms. Billy;

f.    That Ms. Billy's employment would not be impeded in the company;

g.    That Ms. Billy would be protected, her employment and physically;

h.    That Ms. Billy would be provided with all that is necessary to be an EDGE Sales Agent;

i.    That Ms. Billy's real estate agent training and licensing expenses would be provided and paid for by EDGE.

93.    The above contractual promises were made to Ms. Billy by those with actual and/or ostensible authority at EDGE.

94.    Ms. Billy relied on Defendants' representations and promises and began performance.

95.    Unfortunately, EDGE's behaviors that followed breached EDGE's promises and commitments made to Ms. Billy.

96.    EDGE engaged in conduct all in direct violation of her rights under the express promises above made to her.

97.    EDGE breached the express contracts, including written, oral, and implied promises, contracts and agreements made with Ms. Billy, including the implied-by-law covenant of good faith and fair dealing, including by its unlawful conduct towards Ms. Billy, arbitrarily, and in bad faith, and desiring in a deceitful, retaliatory, and unlawful manner to get rid of Ms. Billy; refusing to honor the express contracts promises, agreements; and making the work environment and circumstances of Ms. Billy's employment so intolerable and aggravated that no reasonable person in a civilized society should have to endure such actions by EDGE and its owners, principals, directors, and proxy.

**98.**     Ms. Billy has performed satisfactorily all conditions and covenants required of her under said contracts.  Any conditions, covenants, or promises which Ms. Billy has not performed were not performed as a result of EDGE's breaches and conduct excusing and preventing any such performance by Ms. Billy.

**99.**     As a direct and proximate result of said EDGE's breaches of contracts, Ms. Billy has suffered and will continue to suffer damages, the exact amount of which has not yet been fully ascertained, but is within the jurisdiction of this Court, and includes the above sums, together with pre-judgment and post-judgment interest.

**100.**     Ms. Billy is entitled to and demands relief, including compensatory and consequential damages, including, but not limited to, damages stemming from breaches of contract, including EDGE's breaches of the implied-by-law covenant of good faith and fair dealing, compensation, lost income, including back pay and future pay, and other expenses, and pre-judgment and post-judgment interest, attorney fees, and costs, the exact amount to be shown at the time of trial.

**WHEREFORE,** Plaintiff prays judgment as hereinafter set forth.

### FIFTH COUNT

**(Negligence)**
**(Breach of Duties, Including Assumed Duties, Affirmative Duties)**
**(Against Defendant Maddox)**

**101.**     Plaintiff incorporates by reference the above allegations as if set forth fully herein.

**102.**     Separate, apart, and standing alone from any employment discrimination, retaliation, and/or any Title VII claims, Defendant Maddox individually owed statutory and other

legal duties to Ms. Billy, including, but not limited to:  Not to harm Ms. Billy; not to assault Ms. Billy; not to batter Ms. Billy; not to cause emotional distress to Ms. Billy.

103.    Defendants Maddox negligently or recklessly breached his duties of reasonable care to Ms. Billy, choosing instead to engage in, assist in, enable, and/or commit repeated negligent and reckless acts against Ms. Billy.

104.    Defendants Maddox's negligent or reckless conduct, directly, consequentially, and/or indirectly, constituted breaches of the duties Defendants Maddox owed Ms. Billy.

105.    As a direct and proximate result of the aforementioned actions by Defendant Maddox, Ms. Billy has sustained and will sustain damages including:

        a.     extreme and severe pain and suffering, both physical and mental;

        b.     economic damages, including bills and expenses for medical care and mental health counseling that Ms. Billy required and will require in the future;

        c.     a diminution in the ability and capacity to work, earn money and perform household and other services in the future; and

        d.     non-economic damages, including a loss of enjoyment of life.

106.    Defendant Maddox's breaches of duties were substantial factors in Ms. Billy's injuries and damages, the exact amount to be shown at the time of trial.

        **WHEREFORE,** Plaintiff prays judgment as hereinafter set forth.

## SIXTH COUNT

**(Negligent Infliction of Emotional Distress)**
**(Against Defendant Maddox)**

107.    Plaintiff incorporates by reference the above allegations as if set forth fully herein.

108.    Separate, apart, and standing alone from any employment discrimination, retaliation, and/or any Title VII claims, Defendant Maddox individually, engaged in outrageous conduct and acted with negligent and/or reckless disregard of the consequences of his conduct, acting in a negligent manner reasonably calculated to cause, or resulting in Ms. Billy's severe emotional distress and physical and emotional anguish, fear, and injury.   Defendant Maddox's conduct, including described herein, has caused, and continues to cause, Ms. Billy severe emotional distress.

109.    As a direct and proximate result of the aforementioned actions by Defendant Maddox, Ms. Billy has sustained and will sustain damages including:

a.    extreme and severe pain and suffering, both physical and mental;

b.    economic damages, including bills and expenses for medical care and mental health counseling that Ms. Billy required and will require in the future;

c.    a diminution in the ability and capacity to work, earn money and perform household and other services in the future; and

d.    non-economic damages, including a loss of enjoyment of life.

**WHEREFORE,** Plaintiff prays judgment as hereinafter set forth.

## <u>SEVENTH COUNT</u>

### (Intentional Infliction of Emotional Distress)
### (Against Defendant all Defendants)

110.    Plaintiff incorporates by reference the above allegations as if set forth fully herein.

111.    Separate, apart, and standing alone from any employment discrimination, retaliation, and/or any Title VII claims, Defendants, and each of them, engaged in intentional,

atrocious, intolerable, and so extreme and outrageous conduct towards Ms. Billy as to exceed the bounds of decency.

112.   Defendants, and each of them individually, acted with the intent to inflict emotional distress, wantonly, or at a minimum acted with reckless disregard of the probability of causing emotional distress when it was certain or substantially certain that emotional distress would result from their conduct towards Ms. Billy.

113.   Defendant, and each of them individually, acted knowingly, intentionally, and/or purposefully, and sought to, and did harm and injure Ms. Billy, causing, and which continues to cause, her to suffer emotional distress, physical and emotional anguish, fear, and injury that is so severe that no reasonable person could be expected to endure it.

114.   As a direct and proximate result of the aforementioned actions by Defendants, Ms. Billy has sustained and will sustain damages including:

   a.   extreme severe pain and suffering, both physical and mental;

   b.   economic damages, including bills and expenses for medical care and mental health counseling that Ms. Billy required and will require in the future;

   c.   a diminution in the ability and capacity to work, earn money and perform household and other services in the future; and

   d.   non-economic damages, including a loss of enjoyment of life.

   **WHEREFORE,** Plaintiff prays judgment as hereinafter set forth.

## VI.  PUNITIVE AND LIQUIDATED DAMAGES

### (Willful, Wanton, Malicious, Knowingly Reckless and/or Indifferent Conduct)
### (Against All Defendants)

**115.**     Plaintiff incorporates by reference the above allegations as if set forth fully herein.

**116.**     As to those Counts allowing punitive damages against Defendants, and/or any of them, jointly, severally, or individually, whether under Title VII or otherwise, Ms. Billy is informed, believes, and on that basis alleges, that the conduct of Defendants, including EDGE and/or Maddox, was willful, wanton, malicious and/or reckless and/or knowing with reckless indifference toward, with knowledge of and a disregard of the Title VII and other civil rights of Ms. Billy.   Defendants EDGE and/or Maddox, and each of them jointly, severally, and individually, either intended to cause harm or, at a minimum, were recklessly indifferent to the injury that would likely result from their acts and omissions. Their despicable conduct was done maliciously, fraudulently, and oppressively with a conscious, reckless, willful, and/or callous disregard of the probable detrimental consequences to Ms. Billy, and knowing that Defendants', and/or each of their, conduct was substantially certain to vex, annoy, and injure Ms. Billy, and entitling Ms. Billy to punitive damages in an amount appropriate to punish or set an example of Defendants EDGE and/or Maddox, and each of them jointly, severally, and individually.

## VII.  PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter a judgment against each of the Defendants, jointly, severally, and individually:

**As to the First Count for Violations of Civil Rights and Statutory Discrimination, including *Title VII* (Gender / Sexual Harassment / Hostile Work Environment / Retaliation), against Defendants EDGE:**

1.      For general damages according to proof;

2.      For special and compensatory damages in a sum according to proof;

3.      For back pay and future pay;

4.      For equitable, declaratory, injunctive relief, including reinstatement;

5.      For liquidated and punitive damages in an amount sufficient to punish Defendants;

6.      For pre-judgment and post-judgment interest at the maximum rate allowed by law;

7.      For attorney fees, costs, and expenses incurred herein;

8.      For *Eshelman* damages; and

9.      For such other and further relief as the Court deems just and proper.

**As to the Second Count for Civil Assault, against all Defendants:**

1.      For general damages in a sum according to proof;

2.      For compensatory and special damages in a sum according to proof;

3.      For punitive damages in an amount sufficient to punish Defendants;

4.      For pre-judgment and post-judgment interest at the maximum rate allowed by law;

5.      For attorney fees if permitted by law and costs of suit incurred herein; and

6.      For such other and further relief as the Court deems just and proper.

**As to the Third Count for Civil Battery, against all Defendants:**

1.      For general damages in a sum according to proof;

2.      For compensatory and special damages in a sum according to proof;

3.      For punitive damages in an amount sufficient to punish Defendants;

4.      For pre-judgment and post-judgment interest at the maximum rate allowed by law;

5.      For attorney fees if permitted by law and costs of suit incurred herein; and

6.      For such other and further relief as the Court deems just and proper.

**As to the Fourth Count for Breach of Contracts, including Breach of the Covenant of Good Faith and Fair Dealing, against Defendants EDGE:**

1.      For compensatory and consequential damages;

2.      For damages stemming from breaches of contracts;

3.      For pre-judgment and post-judgment interest at the maximum rate allowed by law;

4.      For attorney fees if permitted by law and costs of suit incurred herein; and

5.      For such other and further relief as the Court deems just and proper

**As to the Fifth Count for Negligence (Breach of Duties, including Assumed Duties, Affirmative Duties), against Defendant Maddox:**

1.      For general damages in a sum according to proof;

2.      For compensatory and special damages in a sum according to proof;

3.      For pre-judgment and post-judgment interest at the maximum rate allowed by law;

4.      For their costs of suit incurred herein; and

5.      For such other and further relief as the Court deems just and proper.

**As to the Sixth Count for Negligent Infliction of Emotional Distress, against Defendant Maddox:**

1.      For general damages according to proof;

2.      For special and compensatory damages in a sum according to proof;

3.      For pre-judgment and post-judgment interest at the maximum rate allowed by law;

4.      For costs incurred herein; and

5.      For such other and further relief as the Court deems just and proper.

**As to the Seventh Count for Intentional Infliction of Emotional Distress against Defendant all Defendants:**

1.      For general damages according to proof;

2.      For special and compensatory damages in a sum according to proof;

3.      For punitive damages in an amount sufficient to punish Defendant;

4.      For pre-judgment and post-judgment interest at the maximum rate allowed by law;

5.      For costs incurred herein; and

6.      For such other and further relief as the Court deems just and proper.

## VIII.  <u>DEMAND FOR JURY TRIAL</u>

Plaintiff Ms. Billy hereby demands and exercises her Constitutional rights to a jury trial.

DATED this 25th day of January 2019      **ANDRUS LAW FIRM, LLC**

BY:  <u>/s/ Randy M. Andrus</u>
**RANDY M. ANDRUS**
*Attorney for Plaintiff*
**VANESSA BILLY**