## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| VANESSA BILLY;<br><br>              Plaintiff,<br><br>v.<br><br>EDGE HOMES, a Utah limited liability company; EDGE CONSTRUCTION, a Utah limited liability company; STEVE MADDOX; and DOES 1–50, inclusive;<br><br>              Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**<br><br>Case No. 2:19-cv-00058-JNP-EJF<br><br>District Judge Jill N. Parrish |

This matter is before the court on the Motion to Dismiss (the "Motion") filed by defendants Edge Homes, LLC, Edge Construction, LLC, and Steve Maddox (collectively, "Defendants") seeking dismissal of six of plaintiff Vanessa Billy's ("Plaintiff") seven causes of action. Defendants filed their initial Motion on March 27, 2019, *see* ECF No. 27, and supplemented that Motion with a distinct argument on May 2, 2019, *see* ECF No. 32. The court entertained oral argument on the Motion on December 10, 2019. Now being fully advised, the court enters the following order granting in part and denying in part Defendants' Motion.

## I.  BACKGROUND

This dispute arises from Plaintiff's one-year employment with Defendants. In December 2016, Edge Homes, LLC and Edge Construction, LLC (collectively, "Edge") hired Plaintiff as a full-time Contract Coordinator in its office located in Draper, Utah. Plaintiff alleges that her supervisor was Steve Maddox ("Maddox"), who "was in the position of power, authority, and control over Ms. Billy's job and promotion opportunities." Am. Compl. ¶ 37. Prior to December 2016, Edge had instituted a harassment at the workplace policy. The policy prohibits sexual harassment and defines it as:

> unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature when, for example: (i) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment; (ii) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual; or (iii) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

*Id.* ¶ 28. The policy also states, in relevant part, that "[s]exual harassment may include a range of subtle and not so subtle behaviors" such as:

> unwanted sexual advances or requests for sexual favors; sexual jokes and innuendos; verbal abuse of a sexual nature; commentary about an individual's body, sexual prowess or sexual deficiencies; leering, catcalls or touching; insulting or obscene comments or gestures; display or circulation in the workplace of sexually suggestive objects or pictures (including through e-mail); and other physical, verbal or visual conduct of a sexual nature.

*Id.* It also prohibits gender discrimination that is "not involving sexual activity or language." *Id.*

Plaintiff alleges that soon after she began her employment, Maddox began giving her unwanted attention at work that "escalat[ed]" into "pervasive, offensive, and unsolicited" sexually discriminatory, harassing, and retaliatory conduct. *Id.* ¶¶ 29, 34. She asserts that "Maddox began with subtle behaviors" such as "asking her repeated questions about her personal life; questions about her boyfriend; how much money he made; why she wasn't married to her boyfriend." *Id.* ¶ 30. He also began oversharing his own romantic relationship and desires. *Id.* ¶ 31. For example, Plaintiff alleges that in or around February 2017, Maddox began "sharing . . . inappropriate stories from his life and his encounters with women" and stated he "wanted a woman with olive skin, dark hair" who was " an active woman, healthy and fit." *Id.* ¶¶ 32, 33, 39. During company meetings, Maddox also "openly joked inappropriately and offensively, intending and directing comments to [Plaintiff]" that "subjected her to ridicule and embarrassment." *Id.* ¶ 35.

2

Plaintiff alleges that Maddox's behavior began to escalate in or around March 2017. She recalls that he would "call[] her into his private office alone" and make "pervasive, offensive, unwelcomed, and unsolicited advances to" her. *Id.* ¶ 34. Plaintiff also asserts that she was similarly uncomfortable when Maddox approached her desk, which "was in a corner of the office," "backed against a wall" and she felt "trapped and fearful of losing her job" when Maddox spoke to her there. *Id.* ¶ 36. During one such occasion in May 2017, Plaintiff recounts that Maddox approached her and said that he "felt like throwing a woman down on a table and f***ing her hard." *Id.* ¶ 38. She asserts that Maddox made this and similar comments for their "shock value" and would "become angry and hostile" if she was unresponsive, often by making "demeaning demands and statements" directed at Plaintiff. *Id.* ¶¶ 38, 42. Plaintiff also alleges that in or around September 2017, Maddox said he "liked her hair," and then touched her hair and head "in an offensive, unwelcomed, unsolicited, and unpermitted manner." *Id.* ¶ 41.

Plaintiff states that she rejected Maddox's advances, including by making complaints to Edge and to Maddox himself. *See, e.g.*, *id.* ¶¶ 34, 35, 39, 43. She recalls that at first, Maddox "would just laugh at her; brush her off; would not stop; and would not leave her alone." *Id*. ¶ 34. In or about October 2017, Plaintiff attempted to improve her situation by applying and interviewing for a Sales Agent position, which she believed would take her out of the office and away from Maddox. *Id.* ¶¶ 45–46. Edge hired her for the position and she began training and seeking licensing, with Edge purportedly promising to pay for her expenses. *Id.* ¶ 47–50. But Maddox's alleged misconduct "continued and worsened," *id.* ¶ 36, and when Plaintiff reported her discomfort, Edge "took retaliatory action against her" by altering her employment terms and conditions and ultimately terminating her on or about December 15, 2017, *id.* ¶ 43, 44, 52, 57. Plaintiff also alleges that prior to her joining the company, Edge knew of prior incidents involving

Maddox and other female employees and that his "behaviors had resulted in other women being harmed and injured including in the work place." *Id.* ¶ 26.

On or about January 2, 2018, Plaintiff filed Charges of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 9. On or about October 30, 2018, the EEOC issued Plaintiff her Notice of Right to Sue. *Id.* ¶ 10. Plaintiff commenced this lawsuit on January 25, 2019, and pled seven causes of action. She alleges that Edge: violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 *et seq.*, based on sexual harassment, hostile work environment, and discriminatory retaliation theories (Count I), committed civil assault (Count II), committed civil battery (Count III), breached contracts between them under the covenant of good faith and fair dealing (Count IV), and committed intentional infliction of emotional distress (Count VII). Against Maddox personally, Plaintiff asserts claims for civil assault (Count II), civil battery (Count III), negligence (Count V), negligent infliction of emotional distress (Count VI), and intentional infliction of emotional distress (Count VII).

Defendants moved to dismiss Plaintiff's state law claims under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Defendants argued in their first motion that Plaintiff's state law claims against both Edge and Maddox are preempted by the Utah Worker's Compensation Act ("UWCA"), that the court lacks supplemental jurisdiction over all of Plaintiff's state law claims against both Edge and Maddox, and that Plaintiff failed to adequately plead her breach of contract, civil assault, civil battery, and intentional infliction of emotional distress claims against Edge. *See* ECF No. 27.[1] Subsequently, Defendants filed a "supplemental motion to dismiss" to add a new

---

[1] Defendants appear to argue that Plaintiff also asserted her breach of contract claim against Maddox personally. *See* ECF No. 27 at 8, No. 36 at 2 n.2. Plaintiff did not assert a breach of contract claim against Maddox. *See* Am. Compl. at 19. Defendants also do not raise Rule 12(b)(6) arguments concerning any other claims against Maddox. ECF No. 36 at 2 n.2. Therefore, the court only considers Defendants' Rule 12(b)(1) arguments concerning the claims against Maddox.

argument that all of Plaintiff's claims against Edge are also preempted by the Utah Antidiscrimination Act ("UADA"). *See* ECF No. 38. Plaintiff responded that her state law claims are not preempted by the UWCA or the UADA, that they are adequately pled, and that they form the same case or controversy as her Title VII claims to justify exercising supplemental jurisdiction. *See* ECF Nos. 32, 38.[2] For the following reasons, the court dismisses with prejudice all of Plaintiff's state law claims against Edge and dismisses with prejudice only the negligence and negligent infliction of emotional distress claims against Maddox.

## II. LEGAL STANDARD

In reviewing Defendants' Motion to Dismiss, the court must "accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff." *Jordan–Arapahoe, LLP v. Bd. of County Comm's of Cty. of Arapahoe*, 633 F.3d 1022, 1025 (10th Cir. 2011). Plaintiff's complaint

---

[2] Plaintiff also argues that the court should not consider Defendants' supplemental motion raising its UADA preemption arguments under Rule 12(b)(6) because it "amounts to an impermissible surreply" and Defendants "raise[d] issues not raised in their initial Motion." ECF No. 38 at 1. Plaintiff is technically correct that Rule 12(g)(2) prohibits a moving party from "mak[ing] another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." FED. R. CIV. P. 12(g)(2). But that rule is also subject to the exceptions in Rule 12(h), which permits the defendant to raise a "failure to state a claim upon which relief can be granted" defense (1) in a pleading in response to an order by the court under Rule 7(a), (2) in a motion for judgment on the pleadings under Rule 12(c), or (3) at trial. FED. R. CIV. P. 12(h)(2). Because the court would entertain Defendants' UADA preemption argument if brought under Rule 12(c), the court may "permissibly treat[] the defendants' second Rule 12(b)(6) motion as though it had been styled under Rule 12(c)." *Lipari v. U.S. Bancorp NA*, 345 F. App'x 315, 317 (10th Cir. 2009) (unpublished) (citing *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 n.2 (10th Cir. 2002)). Other circuit courts have adopted a similar flexible rule to permit successive motions under Rule 12(b)(6) where doing so would serve the purpose of the Federal Rules: "to secure the just, speedy, and inexpensive determination of every action and proceeding." *In re Apple iPhone Antitrust Litig.*, 846 F.3d 313, 318–19 (9th Cir. 2017) (quoting FED. R. CIV. P. 1); *see also Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 321–22 (3d Cir. 2015) ("So long as the district court accepts all of the allegations in the complaint as true, the result is the same as if the defendant had filed an answer admitting these allegations and then filed a Rule 12(c) motion for judgment on the pleadings, which Rule 12(h)(2)(B) expressly permits."); *Ennenga v. Starns*, 677 F.3d 766, 773 (7th Cir. 2012) (ruling that "Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion"). Therefore, in the interest of judicial economy and to avoid delay, the court will consider Defendants' UADA arguments raised in its supplemental motion. *See* ECF No. 36.

must contain enough allegations of fact, taken as true, "to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the [pleaded] factual content [ ] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Further, "federal courts are courts of limited jurisdiction," and "[i]f jurisdiction is challenged, the burden is on the party claiming jurisdiction to show it by a preponderance of the evidence." U*.S. ex rel. Hafter D.O. v. Spectrum Emergency Care, Inc*., 190 F.3d 1156, 1160 (10th Cir. 1999) (citations omitted). Plaintiff must therefore "bear the burden of alleging the facts essential to show jurisdiction and supporting those facts with competent proof. Mere conclusory allegations of jurisdiction are not enough." *Id.* (citations and quotations omitted).

### III.  ANALYSIS

#### A.  CLAIMS AGAINST MADDOX

Plaintiff alleges five state law claims against Maddox for civil assault (Count II), civil battery (Count III), negligence (Count V), negligent infliction of emotional distress (Count VI), and intentional infliction of emotional distress (Count VII). Defendants argue that all five claims should be dismissed under Federal Rule of Civil Procedure 12(b)(1) because they are preempted by the UWCA. Alternatively, Defendants argue that all five claims should be dismissed for lack of subject-matter jurisdiction because they do not form part of the same case or controversy as Plaintiff's jurisdiction-invoking Title VII claims against Edge. The court dismisses with prejudice Plaintiff's negligence and negligent infliction of emotional distress claims against Maddox because they are preempted by the UWCA. The court denies Defendants' Motion to Dismiss the Plaintiff's civil assault, civil battery, and intentional infliction of emotional distress claims against Maddox because those claims are not preempted, and the court may properly exercise supplemental jurisdiction over them.

1. **UWCA Preemption**

The UWCA "relieves employers of any common law liability for injuries sustained by an employee 'on account of any accident or injury or death' that is 'contracted, sustained, aggravated, or incurred by the employee in the course of or because of or arising out of the employee's employment.'" *Helf v. Chevron U.S.A., Inc.*, 203 P.3d 962, 967 (Utah 2009) ("*Helf I*") (quoting UTAH CODE ANN. § 34A–2–105(1)). The UWCA creates an exclusive administrative scheme that offers workers a "simple, adequate, and speedy" forum for remedying certain workplace injuries while also "protecting employers from 'disruptive or vexatious lawsuits' for alleged negligence." *Id.* (quoting *Park Utah Consol. Mines Co. v. Indus. Comm'n*, 36 P.2d 979, 981 (Utah 1934) and *Bryan v. Utah Int'l*, 533 P.2d 892, 893 (Utah 1975)). To this end, the UWCA broadly preempts claims arising from workplace injuries, stating:

> The right to recover compensation pursuant to this chapter for injuries sustained by an employee . . . is the exclusive remedy against the employer and is the exclusive remedy against any officer, agent, or employee of the employer and the liabilities of the employer imposed by this chapter is in place of any and all other civil liability whatsoever, at common law or otherwise, to the employee.

UTAH CODE ANN. § 34A–2–105(1); *see also Sheppick v. Albertson's, Inc.*, 922 P. 2d 769, 773 (Utah 1996) (holding that "[d]istrict courts have no jurisdiction whatsoever over cases that fall within the purview of the Workers' Compensation Act"). Utah courts apply an "indispensable element" test to examine whether a claim is preempted by the UWCA. *See Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1057–59 (Utah 1991). Under this test, "if proof of physical or mental injury is an indispensable element of any claim for relief, that claim is barred by the exclusivity provision of the [UWCA]." *Thomas v. Nat'l Semiconductor, Inc.*, 827 F. Supp. 1550, 1552 (D. Utah 1993).

7

However, the Utah Supreme Court has also recognized an "intent to injure" exception to UWCA preemption, which enables employees to sue a supervisor or employer outside the UWCA process if the worker can prove the actor "knew or expected that injury would be the consequence of his action." *Helf v. Chevron U.S.A. Inc.*, 361 P.3d 63, 69 (Utah 2015) ("*Helf II*") (concerning claims against an employer); *see also Bryan*, 533 P.2d at 893–94 (first recognizing the UWCA "intent to injure" exception in claims against a supervisor). To satisfy the "intent to injure" exception, a plaintiff's injury must be "intentional," as distinct from "injuries that are accidental or the product of negligence." *Helf I*, 203 P.3d at 976. The "intent to injure" exception effectuates this distinction by differentiating "between intentional acts resulting in unknown or unexpected injuries, which are covered under the [UWCA], and intentional acts resulting in known or expected injuries, which fall within the intentional injury exception." *Id.* at 970. Accordingly, a plaintiff can avoid UWCA preemption by alleging "a specific mental state in which the actor knew or expected that injury would be the consequence of his action" even if the "motive for acting was not to injure [the employee]." *Owen v. O'Reilly Auto Enterprises, LLC*, No. 2:16-CV-01102, 2017 WL 5499779, at *3 (D. Utah Nov. 15, 2017) (unpublished) (alteration in original) (quoting *Helf I*, 203 P.3d at 972, 974).

Under this framework the UWCA preempts Plaintiff's negligence and negligent infliction of emotional distress claims against Maddox, but does not preempt her civil assault, civil battery, and intentional infliction of emotional distress intentional tort claims against him.

### i) Negligence (Count V) and Negligent Infliction of Emotional Distress (Count VI)

Plaintiff's negligence and negligent infliction of emotional distress causes of action are preempted by the UWCA because they allege workplace injuries covered by the UWCA that do not fall within the *Helf I* "intent to injure" exception.

8

First, the UWCA covers Plaintiff's negligence-based claims. The UWCA "is the exclusive remedy against any officer, agent, or employee of the employer" for workplace injuries, UTAH CODE ANN. § 34A–2–105(1), including claims against supervisors, *see Bryan*, 533 P.2d at 893–94. Under the indispensable element test, claims arising from workplace conduct are covered by the UWCA if Plaintiff "cannot prove her negligence . . . claims without proving physical or mental injury that occurred on the job." *Giddings v. Utah Transit Auth.*, 107 F. Supp. 3d 1205, 1211 (D. Utah 2015). The elements of Plaintiff's negligence claim are (1) duty, (2) breach, (3) proximate causation, and (4) actual injuries or damages. *See Hunsaker v. State*, 870 P.2d 893, 897 (Utah 1993). Plaintiff pleads that Maddox acted negligently because his workplace conduct breached his duty of care to her in the workplace, which proximately caused "severe pain and suffering, both physical and mental." Am. Compl. ¶ 105. To prove her negligent infliction of emotional distress claim, Plaintiff must show that Maddox (1) "unintentionally cause[d] emotional distress to" Plaintiff, (2) "should have realized that his conduct involved an unreasonable risk of causing the distress," and (3) "should have realized that the distress . . . might result in illness or bodily harm" demonstrated by "severe physical or mental manifestations." *Carlton v. Brown*, 323 P.3d 571, 585 (Utah 2014) (internal citations omitted). Plaintiff pleads that while at work, Maddox "act[ed] in a negligent manner reasonably calculated to cause, or resulting in Ms. Billy's severe emotional distress and physical and emotional anguish, fear, and injury," which manifested as "extreme and severe pain and suffering, both physical and mental." Am. Compl. ¶¶ 108–09. Thus, Plaintiff's negligence and negligent infliction of emotional distress claims against Maddox are covered by the UWCA because they are claims arising from workplace conduct "against [an] employee of the employer," UTAH CODE ANN. § 34A–2–105(1), that have "proof of physical or mental injury [as] an indispensable element," *Thomas*, 827 F. Supp. at 1552.

Second, Plaintiff's negligence-based claims are not exempted from UWCA preemption under the *Helf I* "intent to injure" exception because they are unintentional torts that do not call for Plaintiff to prove "her supervisors knew or expected [their conduct] would result in her injury." 203 P.3d at 974. The elements of Plaintiff's negligence-based claims do not prompt any analysis of Maddox's subjective intent and the "intent to injure" exception does not apply to "negligent or accidental injuries." *Id.* at 969. Therefore, Plaintiff's Count V and Count VI negligence-based claims against Maddox are dismissed with prejudice.

### ii)  Civil Assault (Counts II), Civil Battery (Count III), and Intentional Infliction of Emotional Distress (Count VII)

Plaintiff's civil assault, civil battery, and intentional infliction of emotional distress claims against Maddox are also covered by the UWCA. But these claims are not preempted because, under the *Helf I* "intent to injure" exception, Plaintiff may "bring a tort claim against [her] supervisor for injuries sustained" when the supervisor acted intentionally, *id.* at 968 (citing *Bryan*, 533 P.2d at 892), and "knew or expected that injury would occur as a consequence of his actions," *id.* at 970.

Plaintiff's civil assault, civil battery, and intentional infliction of emotional distress claims are covered by the UWCA because the facts underlying each claim entail workplace injuries and "proof of physical or mental injury is an indispensable element" of the causes of action. *See Thomas*, 827 F. Supp. at 1552. To prove her civil assault claim, Plaintiff must demonstrate that (1) Maddox acted "to cause a harmful or offensive contact with" her "or an imminent apprehension of such contact;" and (2) she was "put in such imminent apprehension." *See Reynolds v. MacFarlane*, 322 P.3d 755, 758 (Utah Ct. App. 2014) (citation omitted). To prove her civil battery claim, Plaintiff must additionally establish that "a harmful contact . . . directly or indirectly result[ed]." *Wagner v. State*, 122 P.3d 599, 603 (Utah 2005) (quoting Restatement (Second) of

Torts § 13 (1965)). To prove her intentional infliction of emotional distress claim, Plaintiff must demonstrate that Maddox "either intentionally or recklessly engaged in intolerable and outrageous conduct that caused her severe emotional distress." *Retherford v. AT&T Commc'ns*, 844 P.2d 949, 967 (Utah 1992)  (citation omitted). Plaintiff has alleged that each of these intentional torts occurred in the workplace. *See, e.g.*, Am. Compl. ¶¶ 30, 34, 36. Thus, Plaintiff's second, third, and seventh causes of action against Maddox are covered by the UWCA because they arise from workplace conduct and have "proof of physical or mental injury [as] an indispensable element." *See Thomas*, 827 F. Supp. at 1552.

But Plaintiff's civil assault, civil battery, and intentional infliction of emotional distress claims are exempted from UWCA preemption under the "intent to injure" exception. Plaintiff alleges sufficient facts, taken as true, to prove that Maddox acted intentionally, "rather than accidental[ly]," under each cause of action. *Helf I*, 203 P.3d at 974. For her civil assault claim, Plaintiff alleges that Maddox intentionally "engaged in harmful, offensive, assaulting conduct towards Ms. Billy" that "was unwanted, unwelcomed, harmful, and damaging to" her. Am. Compl. ¶ 71. Plaintiff recalls multiple instances in which Maddox made her feel "corner[ed]," "trapped," and "frozen and fearful" when he would approach her desk and when they met in his office. *Id.* ¶¶ 34, 36, 38, 40. For her civil battery claim, Plaintiff alleges that Maddox "perpetrated and engaged in battery by making harmful and offensive physical and sexual contact with" her when he touched her hair and head. *Id.* ¶¶ 41, 80, 85. And for her intentional infliction of emotional distress claim, Plaintiff alleges multiple interactions in which Maddox would act hostilely toward her for the "shock value," *id.* ¶ 38, which she contends demonstrates that he "engaged in intentional, atrocious, intolerable, and so extreme and outrageous conduct towards [her] as to exceed the bounds of decency," *id.* ¶ 111.

Plaintiff has also sufficiently pled that Maddox had "a specific mental state in which [he] knew or expected that injury" would result to Plaintiff from his intentional acts. *See Helf I*, 203 P.3d at 974. She plausibly alleges that Maddox "took actions . . . with the intent and specific mental state to injure her," Am. Compl. ¶ 81, and "acted knowingly, intentionally (not accidentally), and/or purposefully, and sought to, and did harm and injure" her, *id.* ¶ 112. Plaintiff pleads that she "complained" to Maddox about his misconduct, "express[ed] her concerns . . . about the way [Maddox] talked to her," and that she "told Maddox to stop, but Maddox would just laugh at her; brush her off; would not stop; and would not leave her alone." *Id.* ¶ 34; *see also id.* ¶ 35 (alleging another instance in which Plaintiff "complained and asked [Maddox] to watch and stop his inappropriate unwelcomed behaviors and conversations, but to no avail"). Instead, Plaintiff asserts that "Maddox's behaviors continued and worsened." *Id.* ¶ 36. Under these facts, the reasonable inference is that Maddox knew his behavior was causing Plaintiff injury but he intentionally continued to act in such a harmful way. Thus, Plaintiff has alleged sufficient facts to satisfy the *Helf I* "intent to injure" exception at this point in the proceedings.[3]

Accordingly, although Plaintiff's second, third, and seventh causes of action are covered by the UWCA, they fit within the *Helf I* "intent to injure" exception to UWCA preemption because

---

[3] Although another potential and equally reasonable inference concerning Maddox's state of mind is that he was acting to fulfill his own sexual desires and interest in Plaintiff, not to harm her, the court must accept the well-pleaded facts in the "light most favorable to the plaintiff." *Jordan–Arapahoe, LLP*, 633 F.3d at 1025. Further, the federal rules state that "intent, knowledge, and other conditions of a person's mind may be alleged generally," FED. R. CIV. P. 9(b), and the Tenth Circuit has held that willfulness in some contexts may be adequately alleged "when the complaint merely stated that the alleged violations were 'deliberate, intentional, and willful,'" *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018) (quoting *Rivera v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902–03 (9th Cir. 2013)). Therefore, Plaintiff's allegations that she told Maddox his conduct was harmful and that it then "continued and worsened" are sufficient to establish his "intent to injure" for purposes of this Motion, but the court may revisit this issue at a later stage of the proceedings.

Plaintiff has plausibly alleged that Maddox's actions were intentional, not accidental, and "that her injury resulted from an act that the actor knew or expected would cause injury." *See Helf I*, 203 P.3d at 976; *see also James v. Frank's Westates Servs., Inc.*, 747 F. Supp. 2d 1264, 1277 (D. Utah 2010) (ruling that "[i]f it is clear from the nature of the conduct alleged that the supervisor's act was indisputably intentional, then further analysis is not necessary to determine" that the claim fits the "intent to injure" exception). Therefore, Plaintiff's civil assault, civil battery, and intentional infliction of emotional distress claims against Maddox are not subject to dismissal on this basis.

### 2.  Supplemental Jurisdiction

Defendants alternatively argue that the court lacks subject-matter jurisdiction over Plaintiff's state law claims against Maddox because they do not form the same case or controversy as Plaintiff's jurisdiction-invoking Title VII sex discrimination claims. *See* ECF No. 27 at 17. This court has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Additionally, "[s]uch supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." *Id.* Federal and state claims are part of the same case or controversy if they "derive from a common nucleus of operative fact." *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 165 (1997) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966)). Pendant state law claims share a "common nucleus of operative fact" if they "arise from the same 'transaction or occurrence' as the jurisdiction-invoking claim." 13D C. Wright, A. Miller, & M. Kane, FED. PRAC. & PROC. JURIS. § 3567.1 (3d ed. 2019).

Here, Plaintiff's state law civil assault, civil battery, and intentional infliction of emotional distress claims against Maddox share a common nucleus of operative facts with her Title VII sex discrimination claims. The alleged facts that form the basis of Plaintiff's civil assault claim are

that Maddox "threatened physical contact with" Plaintiff at the workplace that "was unwanted, unwelcomed, harmful, and damaging to her." Am Compl. ¶ 72. Plaintiff also alleges that Maddox's assaultive conduct constitutes gender discrimination and sexual harassment. *See id.* ¶ 63. The alleged facts that form the basis of Plaintiff's civil battery claim are that Maddox "touch[ed] [her] body and person" in a manner that "was unwanted, unwelcomed, harmful, offensive and/or damaging to her." *Id.* ¶ 85. Again, Plaintiff asserts that this unwanted touching is also gender discrimination and sexual harassment. *See id.* ¶¶ 41, 63. Finally, under her intentional infliction of emotional distress claim, Plaintiff alleges that Maddox's repeatedly made offensive or threatening comments to her for their "shock value," *id*. ¶ 38, which made her "suffer emotional distress, physical and emotional anguish, fear, and injury," *id.* ¶ 113. Plaintiff contends this "shock value" conduct also constitutes sexual harassment and contributed to a hostile work environment because of her gender. *See id.* ¶¶ 42, 61, 63. In short, Plaintiff's federal and state claims arise from the same occurrences and form a common nucleus of operative facts.

But exercising supplemental jurisdiction is ultimately "a doctrine of discretion," and the "court should consider and weigh . . . the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988) (quoting *Gibbs*, 383 U.S. at 726). The court considers whether (1) the pendant claims "raise[] a novel or complex issue of State law," (2) the pendant claims "substantially predominate[] over the [jurisdiction-invoking] claim," (3) the jurisdiction-invoking claim has been dismissed, and (4) "exceptional circumstances" show "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

No discretionary factors counsel against exercising supplemental jurisdiction in this case. Plaintiff's civil assault, civil battery, and intentional infliction of emotional distress claims do not "raise[] a novel or complex issue of State law;" rather, they are straightforward, well-established

14

causes of action in Utah common law. The pendant claims also do not "substantially predominate[]
over" her Title VII claims. Plaintiff emphasizes that her Title VII claim is "domina[nt]," ECF No.
32 at 13, and dedicates much of her complaint to this cause of action, *see* Am. Compl. ¶¶ 51–69.
Finally, Defendants have not moved to dismiss Plaintiff's Title VII claims, nor have they pointed
to any exceptional circumstances that would justify declining jurisdiction over Plaintiff's pendant
state law claims. Therefore, the court exercises supplemental jurisdiction because Plaintiff's
"claims are such that [she] would ordinarily be expected to try them all in one judicial proceeding
. . . ." *See Gibbs*, 383 U.S. at 725.

In sum, the court dismisses with prejudice Plaintiff's negligence and negligent infliction of
emotional distress claims against Maddox because they are preempted by the UWCA. The court
declines to dismiss Plaintiff's civil assault, civil battery, and intentional infliction of emotional
distress claims against Maddox because those claims are not preempted, and the court may
properly exercise supplemental jurisdiction over them.

### B. CLAIMS AGAINST EDGE

Plaintiff alleges four state law causes of action against Edge for civil assault (Count II),
civil battery (Count III), intentional infliction of emotional distress (Count VII), and breach of
contract, specifically based on the implied covenant of good faith and fair dealing (Count IV). *See*
ECF No. 32 at 7. Plaintiff argues that Maddox "may or may not be" an "agent," "proxy," or "alter
ego" of Edge as a corporate entity. *See* Am. Compl. ¶¶ 6, 14; *see also id.* ¶ 27 (alleging that Maddox
acted "individually and as an agent of Edge"). Accordingly, Plaintiff concludes that the purported
intentional torts committed by Maddox may be asserted against Edge. *See* ECF No. 32 at 9.
Defendants contend that the claims against Edge are preempted by the UADA or the UWCA. *See*
ECF Nos. 27, 36. If the claims are not preempted, Defendants argue that the court lacks subject-
matter jurisdiction over Plaintiff's state law claims because they "do not form the same case or

controversy" as Plaintiff's federal Title VII claim. ECF No. 36 at 2 n.2. Defendants also argue that Plaintiff's state law causes of action against Edge fail to adequately state a claim for relief. *Id.*

The court recognizes that "where a conflict arises between the common law and a statute or constitutional law, the common law must yield because the common law cannot be an authority in opposition to [the State's] positive enactments." *Gottling v. P.R. Inc.*, 61 P.3d 989, 991 (Utah 2002) (citations omitted). Here, the court finds that (1) the UADA preempts Plaintiff's breach of the implied covenant of good faith and fair dealing claim against Edge because she cannot prove that claim without showing discrimination, and (2) the UWCA preempts Plaintiff's civil assault, civil battery, and intentional infliction of emotional distress claims against Edge because the UWCA covers those claims and they are not preserved by the *Helf I* "intent to injure" exception. Therefore, all of Plaintiff's state law claims against Edge are dismissed with prejudice because they are preempted by either the UADA or UWCA.

### 1.  UADA Preemption

Defendants argue that Plaintiff's civil assault, civil battery, intentional infliction of emotional distress, and breach of the implied covenant of good faith and fair dealing claims against Edge are preempted by the UADA. *See* ECF No. 41 at 6. Plaintiff disagrees, asserting that the UADA does not preempt these causes of action because they are not discrimination claims. *See* ECF No. 5–6. The court finds that Plaintiff's intentional tort claims against Edge are not preempted by the UADA because they do not have discrimination as an indispensable element and seek to remedy injuries apart from the alleged gender discrimination, retaliation, and sexual harassment Plaintiff experienced. Plaintiff's breach of the implied covenant of good faith and fair dealing claim is preempted because she cannot maintain that claim without relying on her allegations of discriminatory retaliation.

### i)   UADA "Indispensable Element" Test

The UADA provides an administrative process for adjudicating employment discrimination claims against most employers in Utah. *See Buckner v. Kennard*, 99 P.3d 842, 852 (Utah 2004) (explaining that "the exclusive remedy for an employee claiming a violation of the [UADA] is an appeal to the state Division of Antidiscrimination and Labor"). The UADA states that its procedures "are the exclusive remedy under state law for employment discrimination based upon . . . sex . . . or gender identity." UTAH CODE ANN. § 34A–5–107(16). The Utah Supreme Court has twice examined the scope of UADA preemption in *Gottling v. P.R., Inc.*, 61 P.3d 989 (Utah 2002) and *Retherford v. AT&T Communications*, 844 P.2d 949 (Utah 1992). In both cases, the Court reaffirmed that the UADA's exclusivity provision "unambiguously indicates that the UADA preempts 'common law causes of action' for employment discrimination based on the 'specific grounds' it lists." *Gottling*, 61 P.3d at 993 (quoting *Retherford*, 844 P.2d at 961).

The *Retherford* court promulgated a two-part "indispensable element" test—drawn from the UWCA preemption context—to determine when the UADA preempts pendant state law causes of action in an employment discrimination case. *See* 844 P.2d at 964–67 (relying on *Mounteer*, 823 P.2d at 1057–59). First, the court must "determin[e] what injuries the UADA is designed to address." *Id.* at 965. The Utah Supreme Court has established that the state legislature intended the UADA "to address all manner of employment discrimination against any member of the specified protected group." *Id.* at 966; *see also Gottling*, 61 P.3d at 993 (finding the UADA represents the "legislature's intent to preempt all other state law causes of action *for employment discrimination*" (emphasis added)). This includes employer retaliation, sexual harassment, and gender "discriminat[ion] in 'matters of compensation or in terms, privileges, and conditions of employment.'" *Retherford*, 844 P.2d at 965–66 (quoting UTAH CODE ANN. § 34A–5–106(1)(a)(i)).

17

Second, the court must determine whether "employment discrimination . . . supplies an indispensable element of any of [the plaintiff's] causes of action." *Id.* at 966. Under this test, "preemption depends on the nature of the injury" upon which the plaintiff bases her claim, "not on the nature of the conduct allegedly responsible for that harm." *Id.* at 967. In other words, state law tort or contract claims are exempt from UADA preemption if "discrimination is not an indispensable element of these claims," *id.* at 966, as shown by the plaintiff's ability "to maintain [her state law] claims without alleging retaliatory harassment" or other discriminatory injury covered by the UADA, *id.* at 967; *see also Tremelling v. Ogio Int'l, Inc.*, 919 F. Supp. 392, 395 (D. Utah 1996) (applying *Retherford* and ruling that "a common law claim is preempted if 'retaliation' is an indispensable element of the common law claim or, in other words, if the plaintiff would be unable to maintain the claim without alleging retaliatory harassment").[4]

In *Retherford*, the Utah Supreme Court addressed facts materially similar to those at issue here. The plaintiff alleged that she "found herself a target of [] sexually suggestive commentary" and "unwelcome sexual advances" at work. 844 P.2d at 955. She complained that a coworker "touched her, made numerous comments regarding her appearance, and regularly suggested that" she participate in unwanted sexual activities. *Id.* She also recalled that coworkers would "congregate around [her], conversing frequently and explicitly about subjects of a sexual nature," and that her alleged harasser "became more aggressive" as time passed. *Id.* Despite the plaintiff

---

[4] Defendants' argument that the Utah Supreme Court in *Gottling* expanded the scope of UADA preemption established in *Retherford* is a misinterpretation of the relationship between those decisions. While *Gottling* reinforced that the UADA preempts "all common law remedies for employment discrimination," the decision did not expand or otherwise augment the proper application of the *Retherford* "indispensable element" test. *See* 61 P.3d at 992. Indeed, the *Gottling* court observed in a footnote that "the application of the *Retherford* framework is inappropriate in this situation" because the claims in *Gottling* did not present "a conflict between a specific statutory remedy and a common law remedy for a potentially different injury based on the same facts." *Id.* at 992 n.1.

filing complaints for sexual harassment through internal channels, the conduct continued for a year and the plaintiff then filed a charge letter with the EEOC. *Id.* at 956. After an EEOC investigation and report, the employer transferred the plaintiff to a distant office and fired her shortly thereafter. *See id.* at 957. Among other claims, the plaintiff sued under Title VII and filed five pendent state common law claims for discharge in retaliation for complaints of employment discrimination, breach of an implied contract, malicious interference with contractual relations, intentional infliction of emotional distress, and negligent employment. *See id.* at 957–58.

The *Retherford* court held that the UADA preempted the plaintiff's claim for discharge in retaliation for complaints of employment discrimination, but not her four other common law claims. *Id.* at 967. The UADA preempted the discharge claim because the UADA covered discriminatory retaliation injuries and such injuries were an indispensable element of the *Retherford* plaintiff's discharge cause of action. *Id.* at 962. However, the UADA did not preempt the plaintiff's breach of an implied contract, malicious interference with contractual relations, intentional infliction of emotional distress, or negligent employment causes of action "because discrimination is not an indispensable element of these claims." *Id.* at 966. After discussing the respective elements, the court found that:

> While it is true that all four claims arise out of defendants' retaliatory conduct, preemption depends on the nature of the injury, not on the nature of the conduct allegedly responsible for that harm. The injuries [plaintiff] alleges—the broken promise, the mental anguish, the wrongful interference with her contract, and the unchecked misconduct of her fellow employees—are distinct from the injury of retaliation.

*Id.* at 967 (citation omitted). Therefore, "[b]ecause [plaintiff] would be able to maintain these claims without alleging retaliatory harassment," the *Retherford* court held the UADA did not preempt them. *Id.*

Applying the *Retherford* test,[5] the court finds that the UADA does not preempt Plaintiff's civil assault, civil battery, or intentional infliction of emotional distress claims against Edge because those causes of action concern injuries distinct from the gender discrimination, retaliation, and sexual harassment injuries covered by the UADA. But the UADA preempts Plaintiff's breach of the implied covenant of good faith and fair dealing cause of action because she cannot maintain that claim without alleging that Defendants breached the covenant based on discriminatory retaliation.

> **ii)      Civil Assault (Count II), Civil Battery (Count III), and Intentional Infliction of Emotional Distress (Count VII)**

Plaintiff has complained of significant sexually discriminatory, harassing, and retaliatory conduct in the workplace. *See* Am. Compl. ¶¶ 30–52. For example, Plaintiff alleges that Maddox inquired repeatedly about her personal and romantic life; commented about her appearance in a sexually suggestive manner; shared inappropriate details about his relationships and desires,

---

[5] Defendants urge the court to apply a broader version of the indispensable element test articulated in *Plott v. Advanced Comfort Techs., Inc.*, No. 1:18-CV-00048-TC, 2019 WL 1453062, at *3 (D. Utah Apr. 2, 2019) (unpublished) and *Giddings v. Utah Transit Auth.*, 107 F. Supp. 3d 1205, 1212 (D. Utah 2015). *See* ECF No. 36 at 4–5. Those decisions state that the proper analysis at part two of the *Retherford* test is to ask whether the state law claims are "grounded on allegations and injuries of discrimination and harassment based on gender." *Plott*, 2019 WL 1453062, at *3; *Giddings*, 107 F. Supp. 3d at 1212. Stated differently, the *Plott* and *Giddings* courts ruled that the UADA preempted the plaintiff's state common law claims because the facts underlying her claims "stem from" the facts underlying her employment discrimination claims. *See* 2019 WL 1453062, at *3; 107 F. Supp. 3d at 1212. The court declines to follow this test to the extent it is inconsistent with *Retherford*, which analyzed UADA preemption by "the nature of the injury for which [the] plaintiff makes [the] claim, not the nature of the defendant's act which the plaintiff alleges to have been responsible for that injury." 844 P.2d at 965 (alteration in original). Under that analysis, it is irrelevant if the common law claims "stem from" or are "grounded on" the alleged discriminatory conduct; what matters is whether the nature of the injury is distinct such that the plaintiff "would be able to maintain [her state law] claims without alleging" discrimination. *Id.* at 967. The court must "apply the most recent statements of [Utah] law by the [Utah] Supreme Court," and may resort to federal decisions only "[i]f no state cases exist on a point." *Farmers All. Mut. Ins. Co. v. Salazar*, 77 F.3d 1291, 1294 (10th Cir. 1996). Because *Retherford* itself is on point, binding, and represents the most recent articulation of the indispensable element test in the UADA preemption context, the court applies the *Retherford* test.

including by stating he "felt like throwing a woman down on a table and f***ing her hard;" made Plaintiff feel physically cornered at her desk; touched her hair and head without consent; and overall made demeaning comments and demands to Plaintiff because of her gender. *Id.* at 30–42. But for the same reasons articulated in *Retherford*, her state law intentional tort actions based on this conduct are not preempted because neither sexual harassment nor gender discrimination is an indispensable element of these causes of action and she "would be able to maintain these claims without alleging" discrimination. *See Retherford*, 844 P.2d at 967; *see also Sauers v. Salt Lake Cty.*, 735 F. Supp. 381, 386 (D. Utah 1990) (noting that "claims which assert a different injury than the [UADA] covers, such as intentional tort claims, . . . are not necessarily preempted by the Act if an independent cause of action exists outside the Act for such claims").

To prove her civil assault claim, Plaintiff must demonstrate that (1) Defendants acted to cause harmful or offensive contact with her or imminent apprehension of such contact; and (2) she was put in such imminent apprehension. *See Reynolds*, 322 P.3d at 758 (citation omitted). To prove her civil battery claim, Plaintiff must additionally establish that "a harmful contact . . . directly or indirectly result[ed]." *Wagner*, 122 P.3d at 603 (citation omitted). To prove her intentional infliction of emotional distress claim, Plaintiff must demonstrate that Defendants "either intentionally or recklessly engaged in intolerable and outrageous conduct that caused her severe emotional distress." *Retherford*, 844 P.2d at 967 (citation omitted).

As in *Retherford*, "[n]oticeably absent from this list of the indispensable elements of" her three intentional tort claims "is an injury that is a target of the UADA." *Id.* at 967. The indispensable elements of Plaintiff's intentional tort claims against Edge do not require her to prove she experienced gender discrimination, employer retaliation, or sexual harassment. Rather, the injuries Plaintiff alleges under each of these causes of action—the imminent apprehension of

harmful contact, the actual occurrence of such harmful contact, and the mental anguish—"are distinct from the injury of" her alleged gender discrimination. *See id.* Accordingly, Plaintiff can maintain all of her intentional tort claims wholly apart from the alleged discrimination. For example, the *Retherford* court observed that although "the conduct generally labeled sexual harassment is outrageous and intolerable and, when performed with the requisite intent, satisfies the elements of the tort of intentional infliction of emotional distress," such conduct is merely sufficient—but not "indispensable"—to proving this claim. *Id.* at 978. Therefore, because Plaintiff "would be able to maintain these claims without alleging" gender discrimination, *id.* at 967, the UADA does not preempt her intentional tort claims for civil assault, civil battery, and intentional infliction of emotional distress against Edge.

### iii)    Breach of the Implied Covenant of Good Faith and Fair Dealing (Count IV)

Plaintiff also alleges that Edge breached her employment contract by violating the implied covenant of good faith and fair dealing. Under Utah law, "the covenant of good faith and fair dealing inheres in all contracts." *Christiansen v. Farmers Ins. Exch.*, 116 P.3d 259, 262 (Utah 2005). Under the covenant of good faith and fair dealing, parties to an agreement "impliedly promise not to intentionally do anything to injure the other party's right to receive the benefits of the contract." *Eggett v. Wasatch Energy Corp.*, 94 P.3d 193, 197 (Utah 2004) (citing *St. Benedict's Dev. Co. v. St. Benedict's Hosp.*, 811 P.2d 194, 199 (Utah 1991)). Plaintiff alleges that Defendants intentionally injured her right to receive the benefits of her employment contract by terminating her "in retaliation for her rejection of Maddox; her complaints of harassment; and her protected activities." Am. Compl. ¶ 52. In other words, Plaintiff pleads that Edge took adverse employment action against her and intentionally denied her the benefits of her contract because she complained of Maddox's alleged gender discrimination. *Id.* ¶¶ 43, 51–55.

22

Unlike her intentional tort claims, Plaintiff would not "be able to maintain" her breach of good faith and fair dealing claim "without alleging retaliatory harassment" or discrimination based on her gender. *See Retherford*, 844 P.2d at 967. As stated above, the plaintiff in *Retherford* brought a tort claim for discharge in violation of Utah's public policy against gender discrimination and retaliation. *Id.* at 962. The UADA preempted the plaintiff's discharge claim because the UADA covers discriminatory retaliation injuries, and such injuries constituted an indispensable element of that cause of action. *Id.* Subsequent courts in this district have reinforced this application of *Retherford* to preempt state law claims that cannot be maintained without proving discrimination, particularly where the claims involve breach of contract or wrongful termination.[6] Here, Plaintiff argues that Edge intentionally denied her the benefits of her employment contract by taking adverse employment action "without good, just, or legitimate cause." Am. Compl. ¶ 92. But her argument that Edge lacked such "good cause" relies on her assertion that Edge terminated her because of gender discrimination and retaliation. *See id.* ¶¶ 51–53. Accordingly, Plaintiff's alleged

---

[6] *See, e.g.*, *Plott*, 2019 WL 1453062, at *4 (concluding that the UADA preempted the plaintiff's breach of the covenant of good faith and fair dealing claim where the plaintiff's "allegations of breach are no different than allegations of discrimination and retaliation"); *King v. XPO Logistics, Inc.*, No. 2:16-CV-434-DN, 2017 WL 213791, at *3 (D. Utah Jan. 18, 2017) (unpublished) (precluding common law wrongful termination claim where the complaint "alleges only harassment, discrimination, and retaliatory firing on the basis of gender and religion"); *Giddings*, 107 F. Supp. 3d at 1211–12 (finding that the UADA precluded the plaintiff's negligence claims against her employer for hiring an alleged sexual harasser and failing to protect the plaintiff from the discriminatory harassment); *Jones v. Huntsman Cancer Hosp.*, No. 2:12-cv-00814-DAK, 2013 WL 2145764, at *1 (D. Utah May 15, 2013) (unpublished) (dismissing a breach of contract claim as preempted by UADA where the contract "was breached by the defendant's alleged discriminatory conduct"); *McNeil v. Kennecott Utah Copper Corp.*, No. 2:08CV41DAK, 2009 WL 2554726, at *5 (D. Utah Aug. 18, 2009) (unpublished) (holding that the "Plaintiff's state law claims *based on alleged discrimination*—i.e., his wrongful termination and conspiracy claims— are preempted by the UADA" (emphasis added)), *aff'd sub nom. McNeil v. Kennecott Holdings*, 381 F. App'x 791 (10th Cir. 2010) (unpublished); *Tremelling*, 919 F. Supp. at 396 (ruling that the UADA preempted the plaintiff's civil conspiracy claim because the alleged "unlawful, overt act" of the conspirators was discrimination in violation of her civil rights).

injury under her covenant of good faith and fair dealing claim is the same as at least part of the alleged discriminatory injury underlying her Title VII claim and she would not "be able to maintain [this] claim[] without alleging retaliatory harassment." *See Retherford*, 844 P.2d at 967. The UADA preempts such a claim. *Id.* Therefore, Plaintiff's breach of the implied covenant of good faith and fair dealing claim against Edge is dismissed with prejudice.

### 2.   UWCA Preemption

Defendants also argue that Plaintiff's civil assault, civil battery, and intentional infliction of emotional distress claims against Edge are preempted by the UWCA. *See* ECF No. 27 at 12–15. The UWCA covers state law claims arising from workplace conduct that have "proof of physical or mental injury [as] an indispensable element of" the cause of action. *Thomas*, 827 F. Supp. at 1552. But claims that are covered by the UWCA are not preempted if Plaintiff can "prove that an agent of the employer intentionally caused the worker's injury," *Helf II*, 361 P.3d at 69, by showing "that her injury resulted from an act that the actor knew or expected would cause injury," *Helf I*, 203 P.3d at 976. However, a supervisor's "intent to injure" cannot be attributed to the employer when the supervisor "acts on entirely personal motives unrelated to the employer's interests." *Id.* at 975 (quoting *Clark v. Pangan*, 998 P.2d 268, 272 (Utah 2000)).

First, as discussed above concerning Maddox, Plaintiff's civil assault, civil battery, and intentional infliction of emotional distress causes of action against Edge are covered by the UWCA. Plaintiff's civil assault claim requires her to show that she experienced the mental injury of an imminent apprehension of offensive contact. *See Reynolds*, 322 P.3d at 758. Plaintiff's civil battery claim requires her to prove that she experienced the physical injury of "a harmful contact." *Wagner*, 122 P.3d at 603 (citation omitted). And Plaintiff's intentional infliction of emotional distress claim requires her to establish that she experienced the mental injury of "severe emotional distress." *Retherford*, 844 P.2d at 967 (citation omitted). Each claim is predicated on workplace

24

conduct and "proof of physical or mental injury is an indispensable element" of the causes of action. *See Thomas*, 827 F. Supp. at 1552. Thus, the UWCA covers these claims.

Second, unlike her claims against Maddox, Plaintiff has not demonstrated that her intentional tort claims against Edge fall within the *Helf I* "intent to injure" exception to UWCA preemption. To rely on this exception, Plaintiff must sufficiently plead that her employer "intended or directed [her supervisor's] injurious act[s]" that form the basis of her intentional tort claims. *Helf I*, 203 P.3d at 969 (citation omitted); *see also Mounteer*, 823 P.2d at 1058 (stating that "[u]nless plaintiff can prove that [the employer] intended or directed [the harasser's actions], his damages arising from any emotional distress can be compensated only under the workers' compensation scheme"). Determining if Edge "intended and directed" Maddox's conduct is a question of vicarious liability, which "will depend on whether [her] supervisor[] w[as] acting within the scope of [his] employment when [he]" committed the alleged intentional tort. *Helf I*, 203 P.3d at 975–76. The *Helf I* court adopted Utah's general three-part vicarious liability test to determine whether intentional tort claims against an employer may be exempted from UWCA under the "intent to injure" exception. *Id.* at 975. To be attributed to the employer, "the employee's conduct must (1) 'be of the general kind the employee is employed to perform,' (2) 'occur within the hours of the employee's work and the ordinary spatial boundaries of the employment,' and (3) 'be motivated, at least in part, by the purpose of serving the employer's interest.'" *Id.* (quoting *Clark*, 998 P.2d at 272). "[I]f the employee 'acts on entirely personal motives unrelated to the employer's interests,'" then the claims against the employer are not exempted from UWCA preemption. *Id.* (quoting *Clark*, 998 P.2d at 272).

Under this test, Plaintiff cannot establish that Edge "intended or directed" Maddox's alleged intentional tort conduct because Maddox was acting outside the scope of his employment.

25

Although the court recognizes that "as a general rule, whether one is acting within the scope of employment is a question to be determined by the finder of fact," the conduct in question here "is so clearly . . . outside the scope of employment that reasonable minds could not differ as to the finding" and "the court [is] permitted the discretion to decide as a matter of law." *See Clark*, 998 P.2d at 271.

First, Maddox's alleged harassing and offensive behavior cannot be said to be "of the general kind the employee is employed to perform." *See id.* at 272 (citation omitted). "[W]hen a company policy expressly prohibits the alleged intentional employee conduct, Utah courts have held that the injurious acts 'could not have been directed or intended' by the employer." *McFarlane v. Nexeo Staffing, LLC*, No. 2:10CV222 DAK, 2011 WL 1226105, at *2 (D. Utah Mar. 30, 2011) (unpublished) (quoting *Mounteer*, 823 P.2d at 1059). Edge's "harassment at the workplace policy" prohibits employees from making "unwanted sexual advances or requests for sexual favors . . . and other physical, verbal or visual conduct of a sexual nature," as well as conduct that creates "an intimidating, hostile or offensive work environment." Am. Compl. ¶ 28. This is precisely the type of misconduct that Maddox allegedly committed and that underlies Plaintiff's intentional tort claims against Edge. This factor weighs against attributing Maddox's behavior to Edge for purposes of the "intent to injure" exception to UWCA preemption.

Second, Plaintiff has sufficiently pled that Maddox's alleged misconduct "occur[ed] within the hours of the employee's work and the ordinary spatial boundaries of the employment." *Helf I*, 203 P.3d at 975. She contends that Maddox committed civil assault, civil battery, and intentional infliction of emotional distress "at and when she was working in conjunction with her job duties" and refers to specific acts occurring in Maddox's private office and at her desk against a wall. *See, e.g.*, Am. Compl. ¶¶ 30, 34, 36. But the court recognizes that in today's workplace, "spatial and

26

time boundaries are no longer essential hallmarks of an agency relationship," *M.J. v. Wisan*, 371 P.3d 21, 31 (Utah 2016), and "an employee's conduct is not within the scope of employment, although the employee is physically present on the employer's premises, when the employee's actions are far removed in purpose from work assigned by the employer," Restatement (Third) Of Agency § 7.07 (2006). Thus, the spatial and time criterion is not dispositive of the vicarious liability inquiry for purposes of the "intent to injure" exception.

Third, the employee must "be motivated, at least in part, by the purpose of serving the employer's interest" and "if the employee acts on entirely personal motives," then the "intent to injure" exception does not preserve claims against the employer from UWCA preemption. *Helf I*, 203 P.3d at 975. In *James v. Frank's Westates Services*, for example, the court considered an intentional tort and UWCA preemption issue similar to the one raised here. *See* 747 F. Supp. 2d at 1276–79. Applying the *Helf I* "intent to injure" analysis, the *James* court denied the defendant's motion for summary judgment on the plaintiff's intentional infliction of emotional distress claims against her supervisor, but granted summary judgment on her claims against her employer. *Id*. The court reasoned that the plaintiff could not "argue[] that [the supervisor] was making statements that could be reasonably believed to further or advance the business interests of [the employer]." *Id.* at 1277. As a result, the court held that the plaintiff's remedies against her employer for her supervisor's alleged "intentional infliction of emotional distress are limited to those provided for by the Workers' Compensation Act." *Id.*

Here too, Plaintiff cannot prove that Maddox's conduct was motivated by serving Edge's business interest. Instead, Maddox's alleged behavior "arose from his own personal impulses, and not from an intention to further his employer's goals." *See Birkner v. Salt Lake Cty.*, 771 P.2d 1053, 1058 (Utah 1989). Plaintiff pleads that Maddox's alleged misconduct "placed [her] in great

fear for her safety and well being," Am. Compl. ¶ 76, which resulted in "a diminution in [her] ability and capacity to work," *id.* ¶ 114, and an overall "interference with . . . her employment and work performance," *id.* ¶ 63, all in direct conflict with Edge's business interests.[7] Therefore, this criterion indicates that Maddox's actions are outside the scope of his employment and may not be attributed to Edge for purposes of the "intent to injure" analysis.

Plaintiff also pleads that Maddox's alleged misconduct may be attributed to Edge because he "may or may not be" an "agent," "proxy," or "alter ego" of Edge as a corporate entity. *See id.* ¶¶ 6, 14, 16, 24. This argument fails for multiple reasons. First, Plaintiff has pled only conclusory statements regarding Maddox's connection to Edge, without detailing Maddox's role in the management of Edge or why that role would form an agency or alter ego relationship with Edge. Such "conclusory statements . . . do not suffice" to satisfy the plausibility pleading standard. *See Iqbal*, 557 U.S. at 678. Second, the Utah Supreme Court in *Helf I* explicitly rejected a test that would include an employer under the "intent to injure" exception if the supervisor "was an alter ego." 203 P.3d at 962. The court described such a test as a "slight mischaracterization of the law"

---

[7] Defendants argue that sexual misconduct is categorically outside the scope of employment and cannot be imputed to an employer. *See* ECF 35 at 6–7. Defendants are correct that the Utah Supreme Court has recognized several times that "as a matter of law . . . the sexual misconduct of an employee is outside the scope of employment." *Birkner*, 771 P.2d at 1058; *see also Jackson v. Righter*, 891 P.2d 1387, 1391 (Utah 1995) (finding as a matter of law that the defendant's "romantic involvement . . . was so clearly outside the scope of his employment that reasonable minds could not differ"); *J.H. By & Through D.H. v. W. Valley City*, 840 P.2d 115, 123 (Utah 1992) (holding that the defendant's alleged molestations were "clearly outside the scope of his employment"). But the Utah Supreme Court in *M.J. v. Wisan* also recently cast doubt on that categorical rule, refusing to "rule as a matter of law that the sexual activity of an agent can never be a matter within the scope of employment" and finding that "[i]n at least some circumstances the contrary conclusion is possible," including in that case. 371 P.3d at 33. Moreover, as previously discussed in the UADA preemption context, Plaintiff may plead and prove her intentional tort claims without relying on evidence of discrimination or the sexual nature of Maddox's alleged misconduct. Thus, the alleged sexual motivation behind Maddox's purported misconduct does not itself resolve the issue of whether his acts may be deemed "intended and directed" by Edge.

and instead adopted the three-part test described above that focuses on whether the alleged unlawful behavior was within the employee's scope of employment. *Id.*[8] Thus, Plaintiff has not established that Maddox is an agent or alter ego of Edge, and even if she had done so, that does not automatically mean his conduct occurred within the scope of his employment for purposes of the "intent to injure" analysis concerning employers.

Considering the criteria promulgated in *Helf I*, the court finds that (1) Maddox's alleged misconduct was not of the nature he was employed to perform, (2) the events at issue took place on Edge's premises and during work hours, but that is not dispositive for the modern vicarious liability analysis, and (3) by Plaintiff's own account, Maddox's alleged behavior is in direct conflict with Edge's business interests. On balance, Plaintiff cannot prove that Edge "intended or directed" Maddox's alleged intentional tort conduct because Maddox was acting outside the scope of his employment. Therefore, Plaintiff's remedies for her civil assault, civil battery, and intentional infliction of emotional distress claims against Edge "are limited to those provided for

---

[8] The court recognizes that the Utah Supreme Court in *Helf II* stated that an employee may avoid UWCA preemption under the "intent to injure standard" by proving that "an agent of the employer intentionally caused the worker's injury." 361 P.3d at 69. The *Helf II* court also observed that "the worker must show that the employer's agent had 'a specific mental state in which the [agent] knew or expected that injury would be the consequence of his action.'" *Id.* (quoting *Helf I*, 203 P.3d at 974) (alteration in original). But the *Helf II* court did not establish a rule that a corporation may be sued outside the UWCA process for intentional torts committed by agents who are not acting within the scope of their employment. Such a rule would be in direct conflict with the test adopted by *Helf I* and supported by a long line of Utah Supreme Court cases delineating the scope of Utah's respondeat superior liability in general. *See* 203 P.3d at 975–76. *Helf II* makes no mention of respondeat superior, vicarious liability, or the scope of employment because there was no dispute that the supervisors in that case were acting within the scope of their employment when the plaintiff-employee was injured. *See* 361 P.3d at 69–71. Instead, the *Helf II* court was primarily concerned about ensuring that "[e]mployers are not shielded from liability if a manager with the knowledge that an injury is virtually certain to occur simply orders another manager without this knowledge to instruct a worker to perform the dangerous task." *Id.* at 70. This issue is not relevant to the present case. Therefore, the court applies the scope of employment analysis established in *Helf I* to decide whether an employer "intended or directed" the alleged intentional tort of a supervisor. *See* 203 P.3d at 975–76.

by the Workers' Compensation Act," *see James*, 747 F. Supp. 2d at 1277, and are dismissed with prejudice.

## IV. ORDER

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED IN PART and DENIED IN PART. Specifically, the court ORDERS that:

1. Plaintiff's negligence (Count V) and negligent infliction of emotional distress (Count VI) claims against Maddox are dismissed with prejudice because they are preempted by the UWCA.

2. Plaintiff's civil assault (Count II), civil battery (Count III), and intentional infliction of emotional distress (Count VII) claims against Maddox are not dismissed because they are not preempted by the UWCA and the court may properly exercise supplemental jurisdiction over them.

3. Plaintiff's breach of contract for alleged breach of the implied covenant of good faith and fair dealing claim (Count IV) against Edge is dismissed with prejudice because it is preempted by the UADA.

4. Plaintiff's civil assault (Count II), civil battery (Count III), and intentional infliction of emotional distress (Count VII) claims against Edge are dismissed with prejudice because they are preempted by the UWCA.

Signed May 21, 2020

BY THE COURT:

_____
Jill N. Parrish
United States District Court Judge

30